**TREEHOUSE LAW, LLP**
Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Steven A. Urenda (SBN 310849)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com
surenda@treehouselaw.com

*Attorneys for Plaintiffs and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NITAYA McGEE and MIRIAM CARRANZA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZURU CONSUMER BRANDS LLC; ZURU LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Nitaya McGee and Miriam Carranza ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this Class Action Complaint against ZURU LLC and ZURU Consumer Brands LLC ("Defendants"), based upon personal knowledge as to themselves and their own acts and experiences, and upon information, investigation, and belief of their counsel as to all other matters.

## INTRODUCTION

1. This action concerns Defendants' advertisement and sale of Millie Moon Luxury Diapers, in all sizes (the "Products"). Defendants market the Products as premium diapers that offer prolonged absorbency, protection against leaks, and suitability for infants' delicate skin. Those assurances concern the essential functions of a diaper: absorbing and containing waste while remaining safe against an infant's skin. Yet the Products contain a defect that causes them to leak and fail to absorb as represented, and to cause or contribute to severe rashes, redness, blistering, skin peeling, bleeding, and burn-like injuries (the "Defect"). Despite knowing of the Defect and recurring complaints describing these failures, Defendants continued to sell the Products without disclosing those material facts to Plaintiffs and other consumers.

2. Defendants reinforce their assurances through prominent representations on the Products' packaging. They advertise "12 HOUR ABSORBENCY" and a "DOUBLE LEAK GUARD" (the "Absorbency Representations"). They further state that the Products are "DERMATOLOGICALLY TESTED" and contain a "pH BALANCE LINER," alongside Dermatest and OEKO-TEX STANDARD 100 certification marks (the "Skin-Safety Representations," and together with the Absorbency Representations, the "Challenged Representations"). Viewed together, these representations convey that the Products will absorb and contain waste as advertised and have been tested and independently evaluated as suitable for ordinary, prolonged contact with infants' skin. For parents selecting a product their infants will wear against their skin every day, those assurances are material to the purchasing decision.

3. The reported experiences of consumers stand in stark contrast to those assurances. Consumers describe diapers that leak, fail to absorb adequately, and leave infants' clothing damp. They also report severe skin reactions, including blistering, peeling, bleeding, and burn-like injuries,

sometimes requiring medical evaluation and prescribed treatment. Some describe injuries that improved after they stopped using the Products and returned when they resumed use. Others report that infants who had worn the Products without incident developed severe reactions after a later purchase. These reports concern the very performance and skin-safety characteristics Defendants emphasize to induce consumers to purchase the Products.

4. Consumers report these failures across all sizes of the Products. The Products share materially common construction, absorbent core and liner materials, and manufacturing processes across sizes, and Defendants market them using the same Challenged Representations.[1] The Defect therefore implicates the Products' ordinary use and the common assurances under which Defendants sell them. Because diapers are worn directly against infants' skin for extended periods, the reported blistering, open and bleeding skin, and burn-like injuries present a serious safety concern.

5. The complaints accumulated through multiple channels over an extended period. Since at least January 2026, consumers have posted numerous reviews on Target.com describing leakage, inadequate absorbency, and skin injuries associated with the Products. Database entries maintained by the United States Consumer Product Safety Commission (the 'Commission') dating to at least September 2025 likewise describe severe skin reactions following use of the Products. The volume of reported complaints increased substantially in 2026. These accounts repeatedly describe similar experiences: the onset of skin irritation while using the Products, unsuccessful efforts to treat the irritation while continuing use, and improvement after discontinuing the Products or switching brands.

6. Defendants were aware of these concerns. They responded directly to numerous Target.com reviewers, including consumers reporting severe skin reactions. Rather than disclosing the recurring complaints alongside the Challenged Representations, Defendants reaffirmed the Products' certifications and directed consumers to their customer-service channel. Defendants thus continued to invoke the same assurances of testing and certification that consumers had relied upon

[1] The Newborn size substitutes an "UMBILICAL CUT OUT" designation for the "pH BALANCE LINER" designation that appears on the other sizes. Neither Plaintiff purchased the Newborn size. The remaining Challenged Representations appear on every size.

when purchasing the Products, even as consumers reported experiences inconsistent with those assurances. The Products' packaging continued to convey absorbency, leak protection, and skin safety without disclosing the Defect or the recurring complaints Defendants had received.

7. The complaints also prompted news coverage reaching consumers across the country. On May 26, 2026, FOX19 (WXIX Cincinnati) reported accounts from parents in Illinois, Alabama, Pennsylvania, and Oklahoma describing severe rashes, chemical burns, bleeding, and blistering in infants using the Products, and reported that Defendants had not responded to multiple requests for comment.[2] A further report published on or about September 19, 2026, and carried by KMOV, FOX19, and other outlets described similar concerns, including reactions in infants who had previously used the Products without incident.[3] On September 22, 2026, Defendants publicly acknowledged that complaints received directly by the company were referred to its quality team for investigation, while maintaining that its materials and formulation had not changed and that its investigations had identified no contamination, manufacturing defect, or performance issue warranting a recall.[4] Defendants nevertheless continued to market and sell the Products under the Challenged Representations without disclosing the Defect.

8. Plaintiffs purchased the Products in reliance on those representations and paid for diapers they reasonably believed would provide the advertised absorbency and leak protection and would be safe for ordinary, prolonged contact with their infants' skin. They instead received Products that failed to provide the represented benefits and were worth less than the Products as advertised. Had Defendants disclosed the Defect and the material facts concerning the Products' performance and skin safety, Plaintiffs would not have purchased the Products or would have paid significantly less for them. Plaintiffs seek damages, restitution, and injunctive relief on behalf of themselves and the Classes defined below.

---

[2] https://www.fox19.com/2026/05/26/parents-report-severe-rashes-babies-using-millie-moon-diapers/
[3] https://www.fox19.com/2026/09/20/it-was-peeling-like-sunburn-parents-raise-concerns-about-once-trusted-diapers/
[4] https://www.wcpo.com/money/consumer/dont-waste-your-money/millie-moon-says-it-wont-recall-diapers-despite-reports-of-chemical-burns

**PLAINTIFFS**

9. Plaintiff McGee is a citizen of California and currently resides in Riverside, California. During the applicable limitations period, including in or around May 2026, Plaintiff McGee purchased Millie Moon Luxury Diapers in size 4 from Target retail stores in Riverside and Moreno Valley, California, for use by her infant children. After reading the packaging representations "12 HOUR ABSORBENCY," "DOUBLE LEAK GUARD," "DERMATOLOGICALLY TESTED," and "pH BALANCE LINER," and the Dermatest and OEKO-TEX STANDARD 100 certification marks, Plaintiff McGee reasonably believed that the Products would absorb and contain her infants' waste for up to twelve hours without leaking, and that the Products had been tested and certified as safe for prolonged contact with infant skin. When Plaintiff McGee examined the Products' packaging at the Target stores, she did not see any disclosure that the Products leak and fail to absorb as represented or that Defendants had received and responded to recurring consumer reports of severe rashes, blistering, skin peeling, bleeding, and burn-like injuries in infants using the Products. In use, the Products leaked and failed to absorb, and both of Plaintiff McGee's twins developed rashes and skin irritation in the areas covered by the Products, which resolved after she discontinued use. Plaintiff McGee purchased the Products because she believed, based on the packaging representations, that the Products would absorb and contain waste as represented and were safe for prolonged contact with her infants' skin. Had Plaintiff McGee known the truth about the Products, namely that they leak and fail to absorb as represented and cause or contribute to skin injury in ordinary use, Plaintiff McGee would have paid significantly less for the Products, or would not have purchased them at all. As such, Plaintiff McGee was directly financially harmed by Defendants' false and misleading labeling.

10. Despite Defendants' misrepresentations, Plaintiff McGee would purchase the Products if they absorbed and contained waste as represented and were free of the Defect. Although Plaintiff McGee regularly shops at stores that carry the Products, absent an injunction prohibiting Defendants' deceptive labeling, she will be unable to rely with confidence on Defendants' labeling and advertising of the Products in the future. Furthermore, while Plaintiff McGee currently believes the Products' labeling is inaccurate, she lacks personal knowledge as to Defendants' specific

business practices, and thus, she will not be able to determine whether the Products absorb and contain waste as represented and are safe for prolonged contact with infant skin. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with the representations on the Products' packaging. This uncertainty, coupled with her desire to purchase premium diapers that perform as represented, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, other Class Members will continue to purchase the Products, reasonably but incorrectly, believing that they absorb and contain waste as represented and are safe for prolonged contact with infant skin.

11. Plaintiff Carranza is a citizen of California and currently resides in Riverside, California. During the relevant class period, Plaintiff Carranza purchased the Products in size 5 on multiple occasions from a Target retail store in Riverside, California, for use by her infant daughter, most recently in or around March 2026. Based on the packaging representations "12 HOUR ABSORBENCY," "DOUBLE LEAK GUARD," "DERMATOLOGICALLY TESTED," and "pH BALANCE LINER," and the OEKO-TEX STANDARD 100 certification mark, Plaintiff Carranza reasonably believed that the Products would absorb and contain her infant's urine for up to twelve hours without leaking, and that the Products had been tested and certified as safe for prolonged contact with infant skin. When Plaintiff Carranza examined the Products' packaging at the Target store, she did not see any disclosure that the Products leak and fail to absorb as represented or that Defendants had received and responded to recurring consumer reports of severe rashes, blistering, skin peeling, bleeding, and burn-like injuries in infants using the Products. In use, the Products caused Plaintiff Carranza's infant to develop a severe rash on her back and buttocks, which resolved after she discontinued use. On March 31, 2026, Plaintiff Carranza reported the injury to Millie Moon directly, through Millie Moon's customer service channel. On April 6, 2026, a Millie Moon customer service representative responded, reaffirming that the Products are "certified by OEKO-TEX, Dermatest, and PETA" and contain "no latex, lotions, or fragrances to ensure they are as gentle as possible," and asking Plaintiff Carranza to answer a series of questions that would "help our quality team investigate how this might have happened." Defendants did not disclose to Plaintiff

Carranza that they had received other reports of the same injuries. Plaintiff Carranza purchased the Products because she believed, based on the packaging representations, that the Products would absorb and contain urine as represented and were safe for prolonged contact with her infant's skin. Had Plaintiff Carranza known the truth about the Products, namely that they leak and fail to absorb as represented and cause or contribute to skin injury in ordinary use, Plaintiff Carranza would have paid significantly less for the Products, or would not have purchased them at all. As such, Plaintiff Carranza was directly financially harmed by Defendants' false and misleading labeling.

12. Despite Defendants' misrepresentations, Plaintiff Carranza would purchase the Products if they absorbed and contained waste as represented and were free of the Defect. Although Plaintiff Carranza regularly shops at stores that carry the Products, absent an injunction prohibiting Defendants' deceptive labeling, she will be unable to rely with confidence on Defendants' labeling and advertising of the Products in the future. Furthermore, while Plaintiff Carranza currently believes the Products' labeling is inaccurate, she lacks personal knowledge as to Defendants' specific business practices, and thus, she will not be able to determine whether the Products absorb and contain waste as represented and are safe for prolonged contact with infant skin. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with the representations on the Products' packaging. This uncertainty, coupled with her desire to purchase premium diapers that perform as represented, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, other Class Members will continue to purchase the Products, reasonably but incorrectly, believing that they absorb and contain waste as represented and are safe for prolonged contact with infant skin.

## DEFENDANTS

13. Defendant ZURU LLC is a limited liability company organized under the laws of the State of Oregon, with its principal place of business at 228 Nevada Street, El Segundo, California. ZURU LLC is identified on the Products' packaging as the entity responsible for distributing the Products. ZURU LLC manufactures, markets, distributes, and sells the Products throughout the United States, including in California and in this District.

14. Defendant ZURU Consumer Brands LLC is a limited liability company organized under the laws of the State of Delaware and registered to do business in California. ZURU Consumer Brands LLC reports its principal address as 2810 N. Church St., PMB 25528, Wilmington, Delaware 19802-4447. ZURU Consumer Brands LLC markets, distributes, and sells the Products throughout the United States, including in California and in this District.

15. Defendants Does 1 through 10 are entities whose identities are presently unknown to Plaintiffs and who participated in the manufacture, labeling, marketing, distribution, or sale of the Products. Each Defendant participated in and controlled the conduct alleged herein. The precise allocation of responsibility among Defendants is within Defendants' exclusive knowledge. Each Defendant acted as the agent, servant, or alter ego of the others with respect to the conduct alleged herein. Plaintiffs will amend this Complaint to state the true names and capacities of Does 1 through 10 when ascertained.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure and (1) there are more than 100 Class Members; (2) the parties are minimally diverse, as Defendants are citizens of states different from at least some members of the proposed class; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

17. This Court has personal jurisdiction over Defendants because Defendants are registered to conduct business in California, have sufficient minimum contacts in California, ZURU LLC is headquartered in California, and Defendants otherwise intentionally avail themselves of the markets within California through their sale of the Products and other goods in California to California consumers.

18. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this case occurred in this District. Specifically, Plaintiffs reside in this District and they purchased the Products at issue in this case in this District during the statute of limitations period.

19. Pursuant to California Civil Code § 1780(d), a declaration establishing that this District is a proper venue for Plaintiffs' claim under the Consumers Legal Remedies Act is filed concurrently herewith.

## FACTUAL ALLEGATIONS

### A. The Challenged Representations

20. Defendants manufacture, market, distribute, and sell the Products, which are sold at Target and other major retailers throughout the United States, including in California.

21. Defendants market the Products as premium diapers and price them at a premium to conventional diapers sold at the same retailers.

22. Throughout the applicable limitations period, Defendants have executed a uniform marketing campaign, primarily through the Products' physical packaging, representing that the Products provide "12 HOUR ABSORBENCY" and a "DOUBLE LEAK GUARD."

23. Defendants further represent on the Products' packaging that the Products are "DERMATOLOGICALLY TESTED" and contain a "pH BALANCE LINER," and Defendants display on the packaging a Dermatest certification seal and an OEKO-TEX STANDARD 100 certification mark. The Skin-Safety Representations convey to reasonable consumers that the Products have been tested and independently evaluated as safe for ordinary, prolonged contact with infants' skin. The dermatological-testing claim, liner claim, and certification marks reinforce that assurance. That message is misleading because the Products cause or contribute to severe rashes, blistering, skin peeling, bleeding, and burn-like injuries during ordinary use. *See example on following page*:




24. Defendants continue to display the Challenged Representations on the Products' packaging without disclosing the Products' absorbency and leak failures or the recurring reports of severe infant skin injury that Defendants have received.

B. **The Products Are Defective**

25. As alleged above, the Products contain a defect in their design, materials, manufacture, or a combination thereof. The Defect causes the Products to fail in two respects during ordinary use: the Products leak and fail to absorb as represented, and the Products cause or contribute to rashes, redness, blistering, skin peeling, bleeding, and burn-like injuries to infants' skin. The composition, design, and manufacturing specifications of the Products, and the identity of Defendants' suppliers and manufacturing facilities, are within Defendants' exclusive possession.

26. The Defect is inherent in each Product and was present in each Product at the time of sale. The Products share materially common construction, absorbent core and liner materials, and

manufacturing processes across sizes, and Defendants sell every size under the same Challenged Representations

27. Defendants designed, marketed, distributed, and sold the Products with the Defect during the applicable limitations period.

28. Through the Products' packaging and other advertising, Defendants warranted and promised that the Products were suitable for their intended use and safe for prolonged contact with infants' skin.

29. Defendants knew or should have known that the Products had one or more design, material, or manufacturing defects which they failed to disclose, and which result in leaking, inadequate absorbency, and severe injury to infants' skin. The Defect impedes the ability of, or otherwise prevents, the safe use of the Products for their intended purpose.

30. The Defect is widespread and dangerous. Consumers across the Products' sizes have reported that the Products leak and fail to absorb, and that infants wearing the Products developed severe rashes, blistering, skin peeling, bleeding, and burn-like injuries requiring prescribed treatment. Consumers reported these failures through at least three separate channels: direct contact with Defendants' customer-service channel; public reviews posted on Target.com, to which Defendants responded directly; and incident reports submitted to the Commission. Reports submitted to the Commission increased sharply in 2026. On September 22, 2026, WCPO reported that, of 385 complaints concerning Millie Moon filed with the Commission, more than 375 had been submitted during the preceding six months.

31. The ordinary purpose of a diaper is to absorb and contain waste, keep an infant dry, and protect the infant's skin from prolonged contact with moisture.

32. The Products do not perform that function and do not conform to the Absorbency Representations. Rather than absorbing for up to twelve hours, the Products leak in ordinary use, in some instances after a single wetting. Waste escapes at the closures and along the leg and waist edges, and the Products leave infants' clothing damp.

33. Consumers report that infants wearing the Products develop severe rashes, redness, blistering, skin peeling, bleeding, and burn-like injuries in ordinary use, concentrated at the closures, along the leg and waist edges, and in the areas held against the skin.

34. Consumers describe reactions they distinguish from ordinary diaper rash, including burn-like redness, blistering, peeling, and bleeding. Some report that clinicians evaluated the reactions and recommended treatment. Consumers report chemical burns, open and bleeding skin, peeling skin, and wounds requiring prescribed treatment. Consumers repeatedly report that the injuries resolved after they discontinued use of the Products or switched to another brand, and recurred when they resumed use of the Products. Consumers also report that infants who had used the Products without incident developed these injuries after later purchases.

## C. <u>Defendants Received and Responded to Consumer Complaints</u>

35. Since at least January 2026, and continuing through the filing of this Complaint, consumers have posted numerous reviews of the Products on Target.com describing the Defect, both before Plaintiffs purchased the Products and after. Defendants monitor and respond to the reviews consumers post concerning the Products on Target.com.[5] *See examples below and on the following page:*


Would not recommend

13 September, 2026 Verified purchase

**Horrible Chemical burn**

It caused a very bad chemical burn on my 2 month old. She was miserable for 4 days and I tried everything not realizing it was the diaper itself causing it being that they are supposed to be such a great brand.

**1 reply from Millie Moon team - 8 days ago**

Hi Adriana, we appreciate you reaching out and leaving a review. We are so sorry to hear about the experience both you and your little one have had. As parents ourselves I can understand how worrying this would have been for you and your family. We would like to learn more about your experience. If you reach out to us through our website at mymilliemoon.com our customer love team will be happy to help! - Team Millie Moon xx

Adriana

---

[5] Target.com displays only a limited window of consumer reviews, and the reviews described herein are a partial record of the complaints posted on Target.com and that Defendants received.

★☆☆☆☆

26 February, 2026 Verified purchase

**Gives rash**

Really disappointed to find they changed these. They gave my newborn a horrible red reaction and rash which seems to be super common. We loved them before.

> **1 reply from Millie Moon team - 6 months ago**
>
> Hi, thank you for sharing your feedback about Millie Moon diapers, we are sorry to hear that you have had an awful experience. We would love to talk more about your feedback and try to resolve the issues you experienced. If you reach out to us through our website mymilliemoon.com our customer love team would be happy to help! - Team Millie Moon xx

★☆☆☆☆

14 February, 2026 Verified purchase

These diapers gave my newborn chemical burn. It started with what I thought was diaper rash then led to raw open skin that would not heal. I applied ointments for 3 weeks but only cleared up when I changed diaper brands. After doing some research, it does look like these rashes/burns can be common with Millie diapers.

> **1 reply from Millie Moon team - 7 months ago**
>
> Hi, we appreciate you reaching out and leaving a review. We are so sorry to hear about the experience both you and your little one have had. As parents ourselves I can understand how worrying this would have been for you and your family. At Millie Moon, we believe that your child deserves only the best. That's why our diapers are certified by OEKO-TEX, Dermatest, and PETA aswell as Cruelty-Free & Vegan, with no latex, lotions, or fragrances to ensure they are as gentle as possible. We would like to learn more about your experience. If you reach out to us through our website at mymilliemoon.com our customer love team will be happy to help! - Team Millie Moon xx

★☆☆☆☆

20 March, 2026 Verified purchase

Do not buy. Go with pampers swaddles. This leaves a wet feel next to baby skin and causes diaper rash.

> **1 reply from Millie Moon team - 6 months ago**
>
> Hi, we appreciate you reaching out and leaving a review for our diapers. We are sorry to hear that you had a bad experience, and we would like to learn more about this and see if we can resolve this with you. If you reach out to us through our website at mymilliemoon.com our customer love team would be happy to help! - Team Millie Moon xx

★☆☆☆☆ Would not recommend

23 March, 2026 Verified purchase

**Gave my baby a bad diaper rash.**

Our newborn had a really bad diaper rash that kept coming and going, and we couldn't figure out why. After trying all the creams, fancy wipes, using water to rinse his bottom instead of wipes, we finally realized it was the diapers. Each time we were using this brand, it would get worse again, and would get better within 24 hours of stopping. If you're baby has sensitive skin, I would skip this brand.

> **1 reply from Millie Moon team - 6 months ago**
>
> Hi, we appreciate you reaching out and leaving a review. We are so sorry to hear about the experience both you and your little one have had. As parents ourselves I can understand how worrying this would have been for you and your family. At Millie Moon, we believe that your child deserves only the best. That's why our diapers are certified by OEKO-TEX, Dermatest, and PETA aswell as Cruelty-Free & Vegan, with no latex, lotions, or fragrances to ensure they are as gentle as possible. We would like to learn more about your experience. If you reach out to us through our website at mymilliemoon.com our customer love team will be happy to help! - Team Millie Moon xx

36. Consumers also submitted incident reports concerning the Products to the Commission. The reports describe a recurring pattern of severe rashes, blistering, skin peeling, and

burn-like injuries in infants using the Products. Reports concerning the Products were submitted to the Commission before Plaintiffs purchased the Products. Reports submitted to the Commission concerning a consumer product are transmitted to the manufacturer or private labeler identified in the report before the report is published in the Commission's public database.[6] *See examples below and on the following page:*

**CX reported a sample diaper was used on their 2MOF baby. Shortly after, their baby cried in pain...**

Incident Report | 11/26/2025 | 20251019-C5050-2147326982

**Incident Description:** I used a sample Millie Moon diaper on my baby. The diaper appeared soft, well-made, and fit properly. Within a short time, my baby began crying in pain for approximately two hours. We went to the emergency room, where an exam and urine test ruled out infection. The physician determined the diaper caused a chemical burn-type irritation across the entire area it contacted. My baby has no sensitive skin, allergies, or prior rash history. We have had no issues with other brands such as...

**Product:** Diapers (1512)

**Product Description:** Product Name: Millie Moon Diapers Manufacturer/Brand: Millie Moon Product Type: Disposable Baby Diapers size 3 sample pack of 2.

**Injury Info:** Emergency Department Treatment Received

**Manufacturer / Importer / Private Labeler:** Zuru Inc.

**Consumer's 4 MOF baby developed diaper rash and went to a doctor who diagnosed it to be chemical...**

Incident Report | 9/24/2025 | 20250905-77828-2147328062

**Incident Description:** My infant daughter began showing redness on her skin the morning after her first use of Mille Moon diapers. Within a couple of days, the redness progressed into what appeared to be a blister/chemical burn. I do not recall the exact day the blister first appeared, but I do have dated photos documenting the progression. Her pediatrician confirmed this was not a simple diaper rash and recommended specific treatment at home. The injury caused her pain and distress, and I have since stopped using...

**Product:** Diapers (1512)

**Product Description:** Mille Moon Luxury Diapers, size 3, 27 count, resealable bag

**Injury Info:** Seen by Medical Professional

**Manufacturer / Importer / Private Labeler:** Zuru Inc.

---

[6] The Commission's records identify the manufacturer, importer, or private labeler of the Products as "Zuru Inc." as did FOX19's May 26, 2026 report. The Products' packaging identifies no manufacturer, and states that the Products are distributed by ZURU LLC and made in China. The allocation of manufacturing, importing, labeling, and distribution responsibility among Defendants and their affiliates is within Defendants' exclusive knowledge.

**Consumer's 5 MOF got a severe allergic skin reaction while wearing diapers. Symptoms were...**

Incident Report | 2/18/2026 | 20260129-9E007-2147324079

**Incident Description:** My 5-month-old infant experienced a severe skin reaction consistent with a chemical or contact burn after wearing Millie Moon diapers purchased at Target. The first incident occurred on or about November 15, 2025. Within hours of wearing the diaper, she developed bright red skin in the diaper area with raised welts, open wounds, and peeling skin. She was uncomfortable and in pain. The injury resolved after the diaper brand was discontinued. A second incident occurred on January 29,...

**Product:** Diapers (1512)

**Product Description:** Product Name: Millie Moon Diapers Brand / Manufacturer: Ty Inc. Purchased from: Target, Suffolk, VA and Target, Chesapeake, VA Size and Count: First incident (Nov 15, 2025): Size 1, 108 count, purchased August 30, 2025 Second incident (Jan 29, 2026): Size 2, 96 count, purchased as part of a baby shower gift (exact date unknown) Color / Design: Multi-colored Lot / Batch Number: [Insert if available from diaper boxes] Other Information: Disposable diapers for infants, intended for single-use in the diaper area to absorb urine and feces.

**Injury Info:** Seen by Medical Professional

**Manufacturer / Importer / Private Labeler:** Zuru Inc.

**Consumer's 17 MOF daughter developed a severe rash/burn while wearing diapers. She was in pain...**

Incident Report | 4/15/2026 | 20260329-0DBEE-2147321182

**Incident Description:** Purchased size 6 Millie Moon diapers from Target and my 17 month old daughter developed a severe rash/burn. She was in pain and one morning when I changed her diaper there was a noticeable chemical smell.

**Product:** Diapers (1512)

**Product Description:** Millie Moon size 6 diapers from Target PO#: 100001629341-0581 Country of Origin: China Style: 11912

**Injury Info:** First Aid Received by Non-Medical Professional

**Manufacturer / Importer / Private Labeler:** Millie Moon

**Consumer's 2 YOM developed burns and blisters on his bottom while using diapers. Consumer...**

Incident Report | 4/23/2026 | 20260328-705E3-2147321210

**Incident Description:** We have been using Millie Moon Diapers since 2024. We have never had an issue. About 8 months ago we switched to a different brand, when that brand was recently sold out we went back to our trusted Millie Moon Diapers. Almost immediately I noticed what looked liked blisters on my sons bottom. With in 24 hours his bottom continued to get red and inflamed and almost looked like burns or blisters. I stopped use of the diapers immediately after noting other complaints starting in late 2025 early...

**Product:** Diapers (1512)

**Product Description:** Millie Moon size 4 Diapers. Purchased at Target batch 6993697

**Injury Info:** First Aid Received by Non-Medical Professional

**Manufacturer / Importer / Private Labeler:** Millie Moon

37. Consumers reported burn-type injuries to the Commission as early as September 2025. A Commission database entry dated September 24, 2025, described a four-month-old who developed redness the morning after first use of the Products, progressing within days to a blister and chemical burn, which the infant's pediatrician confirmed was not an ordinary diaper rash. A Commission database entry dated November 26, 2025, described a two-month-old who cried in pain for approximately two hours after a single use, was taken to an emergency room where testing ruled out infection, and whose treating physician determined that the diaper had caused chemical burn-type irritation across the entire area it contacted.

38. Defendants received and responded to these complaints before Plaintiffs purchased the Products. More than 25 of the Target.com reviews described above were posted before Plaintiff

Carranza purchased the Products in March 2026, and more than 80 were posted before Plaintiff McGee purchased the Products in May 2026. Defendants replied to consumer reviews posted during that period through the "Millie Moon team" account, addressing reviewers individually.

39. On May 26, 2026, FOX19 (WXIX Cincinnati) reported that parents in Illinois, Alabama, Pennsylvania, and Oklahoma had reported severe rashes, chemical burns, bleeding, and blistering in infants using the Products. One parent described a rash that "extended from her belly button all the way around to her lower back," and that became "so severe her skin was bright red, it was inflamed, it was peeling like a sunburn." Another described the injury as "almost a chemical burn." Defendants did not respond to the outlet's multiple requests for comment, and have continued to market and sell the Products without disclosing the Defect or the complaint record.[7]

40. On or about September 19, 2026, Gray Local Media published a further report concerning the Products, carried by KMOV (St. Louis), FOX19 (Cincinnati), and other outlets. The report described parents across the country whose infants had used the Products without incident and who were newly reporting burns and severe rashes. Defendants again did not respond to the outlet's request for comment.[8]

41. On September 22, 2026, Defendants responded publicly to reports of skin injuries associated with the Products. In a statement to WCPO (Cincinnati), Defendants stated that "[t]here has been no change to the formulation, materials or suppliers used in Millie Moon diapers," and that "[a] recent update to the diaper's outer layer was visual only, extending the printed design further up the diaper. The materials and construction did not change." Defendants stated that "our investigations and testing have identified no evidence of contamination, manufacturing defects, or product performance issues associated with the complaints reviewed Defendants further stated that "[e]ach complaint received directly by Millie Moon is reviewed individually and referred to our quality team for investigation.," that "Millie Moon diapers undergo rigorous quality and safety

[7] https://www.fox19.com/2026/05/26/parents-report-severe-rashes-babies-using-millie-moon-diapers/

[8] https://www.fox19.com/2026/09/20/it-was-peeling-like-sunburn-parents-raise-concerns-about-once-trusted-diapers/

controls throughout production and are OEKO-TEX® STANDARD 100 certified," and that they had "not identified a product safety or quality issue that would warrant a recall."[9]

**D. Defendants' Knowledge of the Defect**

42. As alleged above, Plaintiff Carranza reported the Defect to Millie Moon directly on March 31, 2026, before Plaintiff McGee purchased the Products, and Defendants responded on April 6, 2026, by reaffirming the Products' certifications and requesting information to assist their quality team's investigation.

43. Before Plaintiffs purchased the Products, Defendants had received and responded to consumer complaints reporting severe skin reactions. For example, a Target.com review dated February 14, 2026 reported a chemical burn and raw skin that persisted until the consumer changed diaper brands. Defendants replied by reaffirming that the Products are "certified by OEKO-TEX, Dermatest, and PETA" and contain "no latex, lotions, or fragrances to ensure they are as gentle as possible," and by directing the consumer to contact them to provide additional information.

44. Consumers reported that their children developed severe skin reactions while using the Products and that those reactions subsided after they discontinued use or switched diaper brands. The reviews reproduced above describe these experiences and Defendants' responses. Defendants responded to these complaints using substantially identical language, including in their April 6, 2026, response to Plaintiff Carranza.

45. Defendants have publicly confirmed that they receive, review, and act on consumer complaints concerning the Products. In their September 22, 2026, statement, Defendants stated: "Each complaint received directly by Millie Moon is reviewed individually and referred to our quality team for investigation." Defendants further stated that they had conducted "investigations and testing" concerning the Products. Defendants received and reviewed complaints detailing the Defect prior to Plaintiffs' purchasing of the Products. Defendants had, and have, actual knowledge

[9] https://www.wcpo.com/money/consumer/dont-waste-your-money/millie-moon-says-it-wont-recall-diapers-despite-reports-of-chemical-burns

of the content and volume of the complaints they received, and possess the investigation and testing materials bearing on the Defect.

46. Defendants also possess exclusive knowledge of material facts not reasonably available to Plaintiffs and Class Members, including their internal testing and investigation results, the substantiation for the Challenged Representations, and the full content and volume of consumer complaints they received concerning the Products.

47. Defendants nonetheless continue to market and sell the Products using the Challenged Representations without disclosing the Defect or the recurring reports of severe infant skin injury they have received.

48. Defendants' conduct has allowed them to charge, and Plaintiffs and Class Members to pay, a price premium for the Products. The Products as sold were worth less than the Products as represented and less than competing products, including similarly marketed premium diapers.

49. Plaintiffs and Class Members were injured in fact and lost money or property as a direct and proximate result of Defendants' conduct.

**E. <u>Defendants' Conduct Satisfies Rule 9(b)</u>**

50. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs allege the circumstances of Defendants' misrepresentations and omissions with particularity as follows.

51. WHO: Defendants made the Challenged Representations on the Products' packaging and failed to disclose the Products' absorbency and leak failures and the recurring reports of severe infant skin injury they had received.

52. WHAT: Through the Absorbency Representations, Defendants represented that the Products would provide the advertised absorbency and leak protection. Through the Skin-Safety Representations, viewed together, Defendants represented that the Products were safe for ordinary, prolonged contact with infants' skin. Defendants failed to disclose the Products' absorbency and leak failures and the recurring reports of severe skin injuries they had received and responded to. Defendants failed to disclose that the Products contain the Defect.

53. WHEN: Defendants made the Challenged Representations and withheld the omitted facts throughout the applicable limitations period, including at the time Plaintiffs purchased the Products and at the time each Class Member purchased the Products.

54. WHERE: The Challenged Representations appeared on the Products' packaging, which Plaintiffs examined before purchasing. Defendants omitted the material facts concerning the Products' performance and skin safety from that packaging, where Plaintiffs would have seen them in the course of making their purchases.

55. HOW AND WHY: The Absorbency Representations are false because the Products leak and fail to absorb in ordinary use. The Skin-Safety Representations are misleading because, viewed together, they convey that the Products are safe for ordinary, prolonged contact with infants' skin, although the Products cause or contribute to skin injury during ordinary use. Defendants made these representations to induce Plaintiffs and reasonable consumers to purchase the Products and pay a price premium for them, and Defendants profited and continue to profit from that conduct.

## NO ADEQUATE REMEDY AT LAW

56. Plaintiff McGee seeks damages under the Consumers Legal Remedies Act. Plaintiffs seek restitution under California's False Advertising Law and Unfair Competition Law ("UCL") in the alternative to damages, pursuant to Federal Rule of Civil Procedure 8(d)(2).

57. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law. Indeed, Plaintiffs and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

58. As to injunctive relief, Plaintiffs lack an adequate remedy at law. Money damages are available only as to past purchases. Plaintiffs' claims for injunctive relief seek to change Defendants' ongoing conduct and to prevent future harm. Damages would not require Defendants to cease making the Challenged Representations, and would not require Defendants to disclose the Defect to consumers who continue to purchase the Products.

## CLASS ACTION ALLEGATIONS

59. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**<u>Nationwide Class</u>**
All persons who, while in the United States and within the applicable statute of limitations period, purchased one or more of the Products ("Nationwide Class").

**<u>California Class</u>**
All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more of the Products ("California Class").

**<u>California Consumer Subclass</u>**
All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more of the Products for personal, family, or household purposes ("California Consumer Subclass") (together with the Nationwide Class and the California Class, the "Classes").

60. The following people and entities are excluded from the Classes: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

61. Plaintiffs reserve the right to amend the foregoing Class definitions if discovery or further investigation reveals that the Classes should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

62. Plaintiffs are members of all the Classes.

63. <u>Numerosity</u>: Members of each Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. The precise number of Class Members is unknown to Plaintiffs but is likely to be ascertained from Defendants' records. At a minimum, there likely are thousands of Class Members.

64. <u>Commonality</u>: There are questions of law and fact common to the proposed Classes. Common questions of law and fact include, without limitation:

a) whether the Products contain the Defect;

b) whether Defendants' course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

c) whether the Absorbency Representations are materially misleading to a reasonable consumer;

d) whether Defendants knew or should have known that the Products contain the Defect;

e) whether the Skin-Safety Representations are materially misleading to a reasonable consumer;

f) whether Defendants knew or should have known that the Challenged Representations were false or misleading;

g) whether Defendants had a duty to disclose the facts omitted from the Products' packaging;

h) whether certification of each Class is appropriate under Rule 23; and

i) whether Plaintiffs and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and the scope of such relief.

65. Typicality: Plaintiffs' claims are typical of the other Class Members because Plaintiffs and all Class Members were exposed to the same uniform representations on the Products' packaging and purchased the Products in reliance thereon, and because the same material facts were withheld from Plaintiffs and all Class Members. Plaintiffs and the members of each Class suffered the same economic injury in that they paid a price premium for the Products and would not have purchased them, or would have paid substantially less for them, had they known the truth. Plaintiffs' claims advance the same legal theories as the claims of the other Class Members.

66. Adequacy: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

67. Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. The primary issues, whether the Products perform as represented, whether Defendants' labeling and omissions are deceptive, and whether Defendants knew of the Defect, are common to all Class Members and can be proven using common, class-wide evidence. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a focus on Defendants' uniform misconduct detailed at length in this Complaint.

68. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, which would risk inconsistent adjudications. Further, because the damages suffered by any individual Class Member are relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for Class Members to redress the wrongs done to them.

69. Declaratory and Injunctive Relief: Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members. Specifically, Plaintiffs and Class Members continue to be exposed to Defendants' deceptive labeling in the marketplace. Because Plaintiffs continue to desire to purchase premium diapers that perform as represented, but cannot currently rely on the truth and accuracy of Defendants' labeling, they are at risk of future harm. Unless a class-wide injunction is issued, Defendants will continue to advertise, market, and sell the Products in an unlawful and misleading manner, and members of the Classes will continue to be misled and denied their rights under the law.

## FIRST CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, et seq.**
(*For the California Consumer Subclass*)

70. Plaintiffs repeat the allegations contained in paragraphs 1-69 above as if fully set forth herein.

71. Plaintiffs bring this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.

72. The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiffs and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

73. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...." By using the Challenged Representations on the labeling and advertising of the Products, Defendants have represented and continue to represent that the Products have characteristics (i.e., that the Products provide the advertised absorbency and leak protection, and that the Products are safe for ordinary, prolonged contact with infants' skin) that they do not have. Therefore, Defendants have violated and continue to violate section 1770(a)(5) of the CLRA.

74. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By using the Challenged Representations on the labeling and advertising of the Products, Defendants have represented and continue to represent that the Products are of a particular standard, quality, or grade that they do not meet, as described above. Therefore, Defendants have violated and continue to violate section 1770(a)(7) of the CLRA.

75. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By using the Challenged Representations on the labeling and advertising of the Products, and not delivering Products that provide the advertised absorbency and leak protection or that are safe for ordinary, prolonged contact with infants' skin, Defendants have advertised the Products with characteristics they intended not to provide, or knew they could not guarantee, to consumers. Therefore, Defendants have violated and continue to violate section 1770(a)(9) of the CLRA.

76. The CLRA further prohibits the concealment or suppression of material facts. Defendants had a duty to disclose the material facts alleged herein because Defendants had exclusive

knowledge of those facts, because Defendants actively concealed them, and because Defendants made partial representations regarding the Products' performance and skin safety that were misleading absent disclosure of the omitted facts. Defendants concealed and suppressed those facts, including the Products' absorbency and leak failures and the volume and content of the consumer complaints concerning severe skin injuries that Defendants received and responded to.

77. Had those facts been disclosed on the Products' packaging, Plaintiffs and members of the California Consumer Subclass would have been aware of them before purchase.

78. Defendants' misrepresentations and omissions were material to Plaintiffs and the California Consumer Subclass.

79. At all relevant times, Defendants have known or reasonably should have known that the Challenged Representations were false and misleading, and that Plaintiffs and other members of the California Consumer Subclass would reasonably and justifiably rely on these representations when purchasing the Products. Nonetheless, Defendants deceptively advertise the Products as described herein.

80. Plaintiffs and members of the California Consumer Subclass have justifiably relied on Defendants' misleading representations. Because the misrepresentations were uniform and material, reliance may be presumed or inferred on a class-wide basis under California law.

81. Plaintiffs and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth that the Products contain the Defect and do not perform as represented.

82. Under Cal. Civ. Code § 1780(a), Plaintiffs and members of the California Consumer Subclass seek injunctive relief for Defendants' violations of the CLRA.

83. On June 11, 2026, Plaintiff McGee, on behalf of herself and all other similarly situated consumers, mailed notice to Defendant ZURU Consumer Brands LLC of its CLRA violations pursuant to Cal. Civ. Code § 1782. ZURU Consumer Brands LLC did not provide or agree to provide an appropriate class-wide remedy within 30 days after receiving the notice. Plaintiff McGee therefore seeks all monetary relief available under the CLRA, including actual and punitive

damages, against ZURU Consumer Brands LLC on behalf of herself and the California Consumer Subclass.

84. On September 22, 2026, Plaintiff Carranza, on behalf of herself and all other similarly situated consumers, mailed notice to ZURU Consumer Brands LLC and ZURU LLC of their CLRA violations pursuant to Cal. Civ. Code § 1782. Plaintiff Carranza currently seeks only injunctive relief under the CLRA. Unless Defendants provide a class-wide cure satisfying section 1782, Plaintiff Carranza will amend this Complaint in accordance with section 1782(d) to seek all monetary relief available under the CLRA, including actual and punitive damages, on behalf of herself and the California Consumer Subclass.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, et seq.**
(*For the California Class*)

85. Plaintiffs repeat the allegations contained in paragraphs 1-69 above as if fully set forth herein.

86. Plaintiffs bring this claim individually and on behalf of the members of the proposed California Class against Defendants pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.

87. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

88. Defendants have represented and continue to represent to the public, including Plaintiffs and members of the proposed California Class, through their deceptive Challenged Representations, that the Products provide the advertised absorbency and leak protection and are safe for ordinary, prolonged contact with infants' skin. However, this is not the case. Because Defendants have disseminated misleading information regarding the Products, and Defendants

knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendants have violated the FAL. These representations are misleading both because they are untrue and because Defendants made them while withholding material facts necessary to prevent them from creating a false impression, including the Products' absorbency and leak failures and the complaint record Defendants received.

89. As a result of Defendants' false advertising, Defendants have and continue to unlawfully obtain money from Plaintiffs and members of the California Class. Plaintiffs therefore request that the Court cause Defendants to restore this fraudulently obtained money to Plaintiffs and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, et seq.**
(*For the California Class*)

90. Plaintiffs repeat the allegations contained in paragraphs 1-69 above as if fully set forth herein.

91. Plaintiffs bring this claim individually and on behalf of the members of the proposed California Class against Defendants pursuant to California Business & Professions Code § 17200 *et seq*.

92. The UCL provides, in pertinent part, that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"

93. Unlawful Prong: Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' Challenged Representations are "unlawful" as they violate the CLRA and FAL. As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiffs and members of the proposed California Class.

94. Unfair Prong: Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' labeling and advertising. Deceiving consumers into believing they will receive Products that provide the advertised absorbency and leak protection and are safe for prolonged contact with infants' skin is of no benefit to consumers, especially when they pay a premium for that assurance. The practice harms consumer trust and fair competition. Therefore, Defendants' conduct was and continues to be "unfair." As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiffs and members of the proposed California Class.

95. Fraudulent Prong: Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was and continues to be fraudulent because their representations have the effect of deceiving consumers into believing the Products provide the advertised absorbency and leak protection and are safe for prolonged contact with infants' skin. Because Defendants misled Plaintiffs and members of the California Class about the Products, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiffs and members of the California Class.

96. Plaintiffs and the California Class could not have reasonably avoided this deception and injury.

97. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

98. Defendants' conduct violated the public policy against false and misleading labeling and advertising, which is tethered to the CLRA and the FAL.

99. For all prongs, Defendants' misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the misrepresentations when purchasing the Products.

In addition, class reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

100. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decisions and the purchase decisions of Class Members.

101. Plaintiffs and the California Class were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Products, or would have paid less for them, if they had known the truth about the Defect.

102. Plaintiffs request that the Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to them and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
(*For the California Class*)

103. Plaintiffs repeat the allegations contained in paragraphs 1-69 above as if fully set forth herein.

104. Plaintiffs bring this claim individually and on behalf of the members of the California Class against Defendants for breach of express warranty under Cal. Com. Code § 2313.

105. California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

106. Through the Challenged Representations on the Products' packaging, Defendants expressly warranted that the Products would provide the advertised absorbency and leak protection

and would be suitable for ordinary, prolonged contact with infants' skin. However, as alleged herein, these express representations are false and misleading.

107. The Challenged Representations constitute affirmations of fact or promises concerning the Products' absorbency, leak protection, and suitability for ordinary, prolonged contact with infants' skin. They became part of the basis of the bargain when Plaintiffs and other consumers relied on them in purchasing the Products and created express warranties that the Products would conform to those representations.

108. The Products do not conform. They leak and fail to absorb and cause or contribute to skin injury in ordinary use. Defendants therefore delivered non-conforming goods.

109. Plaintiffs and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties. Had Defendants not made these express warranties, Plaintiffs and the California Class would not have purchased the Products or would have paid significantly less for them.

110. Defendants have breached the express warranties made to Plaintiffs and members of the California Class by failing to provide Products that conform to the Challenged Representations used on the Products' packaging.

111. Plaintiffs and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. The measure of damages for this breach is the difference between the value of the Products as warranted and the actual value of the non-conforming Products delivered. Upon discovery of this breach, Plaintiff McGee, through the undersigned counsel, notified ZURU Consumer Brands LLC of its breach of warranty by a notice letter sent on June 11, 2026. ZURU Consumer Brands LLC has failed to cure the breach despite having a reasonable opportunity to do so. Plaintiff Carranza, through the undersigned counsel, notified ZURU Consumer Brands LLC and ZURU LLC of their breaches of warranty by notice letters sent on September 22, 2026.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2314**
(*For the California Class*)

112. Plaintiffs repeat the allegations contained in paragraphs 1-69 above as if fully set forth herein.

113. Plaintiffs bring this claim individually and on behalf of the members of the California Class against Defendants for breach of the implied warranty of merchantability.

114. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

115. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as... (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

116. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as... (c) [a]re fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c).

117. Defendants are merchants with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

118. By advertising with the Challenged Representations on the labeling of the Products, Defendants made an implied promise that the Products would provide the advertised absorbency and leak protection and would be safe for prolonged contact with infants' skin. However, the Products do not "conform to the promises... made on the container or label" because the Products leak and fail to absorb as represented and cause or contribute to skin injury in ordinary use.

119. Moreover, under Cal. Com. Code § 2314(2)(c), the Products are not fit for their ordinary purpose of absorbing and containing waste, keeping an infant dry, and protecting the infant's skin from prolonged contact with moisture.

120. As such, Plaintiffs and other California consumers did not receive the goods as impliedly warranted by Defendants to be merchantable. Therefore, the Products are not merchantable under California law and Defendants have breached their implied warranty of merchantability in regard to the Products.

121. If Plaintiffs and members of the California Class had known that the Challenged Representations were misleading and that the Products contain the Defect, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiffs and members of the California Class have suffered injury and are entitled to recover all damages afforded under the law.

122. On June 11, 2026, Plaintiff McGee notified ZURU Consumer Brands LLC of its breach of warranty by a notice letter outlining the foregoing allegations. On September 22, 2026, Plaintiff Carranza notified ZURU Consumer Brands LLC and ZURU LLC of their breaches of warranty by notice letters outlining the foregoing allegations.

123. Privity with Defendants is not required here for Plaintiffs and the California Class because Plaintiffs and the California Class are the intended end-consumers of the Products and the third-party beneficiaries of the sale of the Products from Defendants to retailers of the Products (e.g., Target).

## SIXTH CLAIM FOR RELIEF
**Quasi Contract/Unjust Enrichment/Restitution**
(*For the Nationwide Class; alternatively, for the California Class*)

124. Plaintiffs repeat the allegations contained in paragraphs 1-69 above as if fully set forth herein.

125. Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants for unjust enrichment. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and members of the California Class.

126. As alleged herein, Defendants have intentionally made misleading representations regarding the Products' absorbency, leak protection, and safety for prolonged contact with infants' skin to, and concealed material facts from, Plaintiffs and members of the Nationwide Class to induce them to purchase the Products. Plaintiffs and members of the Nationwide Class have reasonably

relied on the misleading representations and have not received all of the benefits and promises made by Defendants. Plaintiffs and members of the proposed Nationwide Class have therefore been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

127. Plaintiffs and members of the Nationwide Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiffs and members of the proposed Nationwide Class.

128. The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Nationwide Class, i.e., Plaintiffs and members of the proposed Nationwide Class did not receive the full value of the benefits conferred upon Defendants due to the misrepresentations about the Products' absorbency, leak protection, and safety for prolonged contact with infants' skin. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them.

129. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Nationwide Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, respectfully pray for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class Counsel;

B. A declaration that Defendants' actions, as described herein, violate the applicable laws identified herein;

C. An award of injunctive relief as is necessary to protect the interests of Plaintiffs and the proposed Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the unlawful acts described above;

D. An award of damages, including compensatory, punitive, and statutory damages to Plaintiffs and the Classes in an amount to be determined at trial;

E. An award to Plaintiffs and the applicable Classes of restitution and disgorgement of all monies wrongfully obtained by Defendants;

F. An award to Plaintiffs and their counsel of reasonable attorneys' fees and costs pursuant to Cal. Civ. Code § 1780(e), Cal. Code Civ. Proc. § 1021.5, and other applicable laws;

G. An award to Plaintiffs and the proposed Classes of prejudgment and postjudgment interest, to the extent allowable; and

H. Such other and further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the proposed Classes, hereby demand a jury trial with respect to all issues triable of right by jury.

DATED: October 10, 2026 TREEHOUSE LAW, LLP

By: /s/ Ruhandy Glezakos

Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
Steven A. Urenda (SBN 310849)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com
surenda@treehouselaw.com

*Attorneys for Plaintiffs and the Putative Classes*

**<u>Venue Declaration Pursuant to Cal. Civ. Code 1780(d)</u>**

I, Nitaya McGee, declare as follows:

1. I am the named Plaintiff in the above-captioned action and a citizen of the State of California. I have personal knowledge of the facts set forth in this declaration, and am competent to testify to the same. The matters set forth herein are true and correct to the best of my knowledge and belief.

2. I believe that the Central District of California is the proper place for trial of this case because I reside in and purchased the challenged Products in this district.

I declare under penalty of perjury that the foregoing is true and correct, executed on 10/01/2026 in Riverside, California.

Nitaya McGee